IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1650-WJM-KLM

CLAIMSOLUTION, INC., a Missouri corporation,

    Plaintiff,

v.

CLAIM SOLUTIONS LLC, a Colorado limited liability company,

    Defendant.

---

**ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT,
AWARD ATTORNEY'S FEES AND STAY ALL DEADLINES PENDING**

---

Before the Court is Plaintiff ClaimSolution, Inc.'s ("Plaintiff") Motion to Enforce Settlement Agreement, Award Attorney's Fees and Stay All Deadlines Pending ("Motion") against Defendant Claim Solutions, LLC ("Defendant"). (ECF No. 28.) For the reasons set forth below, Plaintiff's Motion is denied.

## I. BACKGROUND

On July 7, 2017, Plaintiff brought claims against Defendant, alleging that Defendant "infringed on its registered trademark by operating a business in the insurance field with the same or substantially the same name." (ECF No. 28 at 3; *see also* ECF No. 1 at 5–7.) In addition, Plaintiff alleged that Defendant was "operating a website under a domain name that infringed on its registered trademark." (ECF No. 28 at 3; *see also* ECF No. 1 at 7–8.)

On September 12, 2017, counsel for the parties began informal settlement discussions. (ECF No. 28 at 4.) On January 19, 2018, Defendant's counsel sent to

Plaintiff's counsel the following e-mail (the "January 19th Settlement Offer"):

> [Defendant] has agreed to change the company name with the secretary of state. We believe this will save both are [sic] clients unnecessary time and expense. Along with the domain change, and $1,000 in payment[,] we would like you to reconsider this offer. I will get back with you concerning the name change with the secretary of state as soon as possible.

(ECF No. 28-2 at 1.) Plaintiff asserts that Defendant's January 19th Settlement Offer "contained three clearly defined terms." (ECF No. 28 at 1.) In particular, Plaintiff alleges that Defendant offered to: "(1) change its infringing name with the secretary of state; (2) transfer its infringing website domain to Plaintiff [the "Second Term"]; and (3) remit $1,000.00 to Plaintiff [collectively, the "Three Terms"]." (*Id.* at 1–2.)

Defendant, however, rejects Plaintiff's interpretation of its January 19th Settlement Offer in regard to the Second Term. (ECF No. 29 at 1.) Defendant asserts that, "[d]espite Plaintiff's contention, Defendant never sent an email to Plaintiff offering to transfer its website name to Plaintiff," but instead the e-mail only provided that Defendant would "change its domain." (*Id.*)[1]

On January 25, 2018, Plaintiff's counsel sent Defendant's counsel an e-mail stating that Plaintiff "has agreed to settle for the terms [contained in the January 19th Settlement Offer.]" (ECF No. 28-3.) In addition, the e-mail stated that Plaintiff would "draft a settlement agreement and send it to [Defendant] for review." (*Id.*) Plaintiff contends that this e-mail was its written acceptance of Defendant's January 19th Settlement Offer and that the Three Terms were included in that offer. (ECF No. 28 at

---

[1] According to Defendant, the Three Terms were "initially proposed by Plaintiff at the outset of settlement negotiations." (ECF No. 29 at 3.)

2.)  Defendant, however, maintains that the parties had a misunderstanding in regard to the Second Term.  Defendant asserts that this "misunderstanding on both sides concerning what exactly was to be done about Defendant's website" was a "fundamental issue."  (ECF No. 29 at 1–2.)

On February 14, 2018, Plaintiff's counsel e-mailed Defendant's counsel "a draft of the settlement agreement" and asked him to redline any changes he may have.  (ECF No. 28-4 at 1.)  Approximately one hour later, Defendant's counsel responded that "[t]he only issue" Defendant had with the "proposed settlement agreement" was the time Defendant was given to transfer the domain.  (ECF No. 28-5 at 1.)  In particular, Defendant's counsel "request[ed] at least 60 days from the date of settlement before transferring the rights to the domain name to allow [Defendant] enough time to redirect [its] web traffic."  (*Id.*)  Defendant's counsel further noted that in "previous discussions" the parties had discussed a transfer timeline of six months.  (*Id.*)

Within minutes, Plaintiff's counsel responded that it would agree to give Defendant sixty days to transfer the rights to the domain name.  (*Id.*)  Attached to Plaintiff counsel's e-mail was a revised settlement agreement which included the Three Terms and a sixty-day domain transfer term (the "February 14th Document").  (ECF No. 28 at 2.)  Plaintiff alleges that at this point in time, "the parties had reached a settlement and were in full agreement as to the wording of the written Settlement Agreement memorializing all terms."  (*Id.*)  Thus, Plaintiff's Motion is asking this Court to enforce the February 14th Document as the alleged operative settlement agreement.

After receiving the February 14th Document, Defendant's counsel asserts that he "immediately notified [Plaintiff's] counsel" that "Defendant had noticed an additional

3

issue with the transferring of the domain name . . . ."  (ECF No. 29 at 2.)  Defendant's counsel also e-mailed Plaintiff's counsel "inquiring as to whether Plaintiff would be open to Defendant's current website redirecting to Defendant's new website, or simply shutting down the website entirely without transferring any rights to the domain name." (ECF No. 29 at 2; see ECF No. 28-7 at 2.)  Defendant's counsel stated in the e-mail that Defendant "is concerned that if there is a [domain] transfer that the site could contain material that is detrimental to [Defendant's] business."  (ECF No. 28-7 at 2.)

On February 19, 2018, Plaintiff's counsel responded that "[Plaintiff] would be willing to have the website shut down and include in the agreement that [Defendant] agrees never to re-register the domain name."  (*Id.* at 1.)  In addition, Plaintiff's counsel attached a revised settlement agreement that included such "termination language [that Plaintiff] will agree to" (the "February 19th Document").  (*Id.*)[2]  Moreover, Plaintiff's counsel asked Defendant's counsel to insert into the February 19th Document the name Defendant will be registering with the secretary of state.  Once Defendant's counsel had inserted the new name, Plaintiff's counsel said he would "put the settlement agreement in a PDF" and each party could then execute the agreement.  (*Id.*)  Later that day, Defendant's counsel e-mailed Plaintiff's counsel the February 19th Document with Defendant's new name included.  (*Id.*)

---

[2] In its Motion, Plaintiff alleges that it "refused" Defendant's request and "demanded the transfer of the domain name pursuant to the Settlement Agreement."  (ECF No. 28 at 2.)  From Plaintiff's own exhibits, however, it is manifestly clear that such a refutation did not occur until after Plaintiff's counsel agreed to Defendant's request.  (*See* ECF No. 28-7 at 1.)  This is only one of what appear to be myriad of inconsistencies between Plaintiff's counsel's characterizations of his actions, and what the underlying documents actually say.  (*See* ECF Nos. 28 at 2, 7 & 28-1 at 4; *but see* ECF Nos. 28-7 at 1–2, 28-8 at 1, 29 at 2–3.)

4

On February 27, 2018, Plaintiff's counsel sent Defendant's counsel an e-mail that contained the following:

> We've ran into a little problem. I understood that my client was fine with your client simply shutting down the website, but I misunderstood what they were wanting. They want your client to transfer the website to them as part of the settlement. The relinquishment of the website is something they believe is a fundamental part of the settlement. . . . My client only wants the domain name so that they can ensure it is not used. They have no plans of actually using the domain name.

(*Id*.) In addition, counsel for Plaintiff attached a revised settlement agreement that specified that Defendant would transfer its website domain to Plaintiff. (*Id*.) Defendant's counsel responded that his client "would be fine transferring the website as long as there was language added [to the settlement agreement] that nothing would be published on that website." (ECF No. 28-8 at 2.) Plaintiff's counsel replied, agreeing to "not publish anything on the Website, except a link redirecting users to one of [Plaintiff's] other websites." (*Id.* at 1.) The e-mail further noted: "If [Defendant] is agreeable, attached is the new version of the settlement agreement with the appropriate changes to [the Transfer of Domain Name provision]." (*Id.*)

On March 16, 2018, Defendant's counsel responded that Defendant could not agree to this new version of the settlement agreement. (*Id.*) Defendant's counsel noted that "[Defendant] is very concerned about the website issue and his potential clients going to a website he has used for years and being directed to your client." (*Id.*)[3]

---

[3] According to the complaint, Plaintiff "represents insurers in the claims process, while Defendant represents the insured in the claims process." (ECF No 1 at 4.) Thus, each party is concerned about their clients confusing them for the other. (*Id.*; *see also* ECF No. 28-7 at 2.) This appears to be the reason for Defendant not wanting its website to redirect its visitors and clients to a company that represents the opposing side in the claims process.

In addition, Defendant's counsel stated that due to the protracted negotiations, Defendant would no longer agree to pay $1,000 to Plaintiff in compensation for Plaintiff originally filing the case in the wrong jurisdiction.  (*Id.*)

On April 17, 2018, Plaintiff filed the pending Motion, asking this Court to: (1) enforce the alleged February 14, 2018 settlement agreement; (2) award Plaintiff attorney's fees; and (3) stay all deadlines pending the resolution of this Motion.  (ECF No. 28.)  On May 1, 2018, Defendant filed its response to Plaintiff's Motion ("Response").  (ECF No. 29.)  On October 3, 2018, United States Magistrate Judge Kristen L. Mix granted in part Plaintiff's unopposed motion to amend the scheduling order (ECF No. 31).  (ECF No. 33.)  The discovery deadline was extended to January 2, 2019, and the dispositive motions deadline was extended to February 1, 2019.  (*Id.*)

## II.  ANALYSIS

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004).  Because settlement agreements are contracts, "[i]ssues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."  *Id*. at 1060.  This is true "even when there are federal causes of action in the underlying litigation."  *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001).

Colorado public and judicial policies favor voluntary agreements to settle legal disputes.  *See Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992).  However, a court may enforce a settlement agreement only if it constitutes an

6

enforceable contract. *See H.W. Houston Constr. Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981).

In Colorado, "[i]n order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement." *Id*. "[T]he evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 888 (Colo. 1986). Moreover, "[t]o have an enforceable contract it must appear that further negotiations are not required to work out important and essential terms." *New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) (citing *Am. Mining Co. v. Himrod-Kimball Mines, Co.*, 235 P.2d 804, 807–08 (Colo. 1951)). The question before the Court, therefore, is whether the parties entered into an enforceable settlement agreement on February 14, 2018.

**A.     No Meeting of the Minds**

In its Motion, Plaintiff alleges that the "facts demonstrate the parties had a meeting of the mind on all essential terms." (ECF No. 28 at 9.) To support its argument, Plaintiff claims that "the undisputable facts clearly demonstrate that the precise terms of an offer presented by Defendant were accepted by Plaintiff in writing." (*Id.*) According to Plaintiff, Defendant presented its offer containing the Three Terms in its January 19th Settlement Offer and Plaintiff accepted the offer in writing on January 25, 2018. (*Id.* at 1–2.) Plaintiff further asserts that the February 14th Document "memori[alized] the parties January 25, 2018 settlement." (*Id.* at 2.)

After a careful review of the record, it is readily apparent that there was in fact no

meeting of the minds between the parties as to the essential terms of the settlement agreement, as required by Colorado law in order for the settlement agreement to be an enforceable contract. *See H.W. Houston Constr. Co.,* 632 P.2d at 565. Defendant's January 19th Settlement Offer clearly did not contain the Second Term. Instead, the e-mail simply said that Defendant would agree to a "domain change." It is beyond dispute that domain transfer was a part of the parties' settlement discussions. (*See* ECF Nos. 1 at 4, 29 at 3, 30 at 3.) But it is also beyond dispute that the Second Term was not in the January 19th Settlement Offer. If Plaintiff means to argue, which it does not do explicitly, that "domain change" actually means transfer of domain rights, this Court finds that Plaintiff has failed to present any evidence to support such an interpretation. In addition, Plaintiff does not provide any evidence that the phrase "domain change" was understood by both parties at the time of their negotiations to signify that Defendant would transfer its domain rights to Plaintiff.[4]

Plaintiff also asserts that the February 14th Document should be enforced because, in objecting to the draft, Defendant only objected to the transfer timeline and not to the domain transfer language. (ECF No. 30 at 3.) Thus, Plaintiff claims that there was a meeting of the minds as to the Second Term because Defendant acknowledged in its response to the February 14th Document that it would be transferring its domain to Plaintiff. (*Id.* at 3–4.) The Court, however, finds this to be

---

[4] Plaintiff's only support for its interpretation of "domain change" is that it alleges that "[f]rom the beginning of settlement negotiations the parties had always discussed that transfer of the website domain name had to be part of any settlement." (ECF No. 30 at 3.) The Court accepts this as true. It does not change the fact that the January 19th Settlement Offer did not include the Second Term.

insufficient evidence to establish that there was a meeting of the minds between the parties as to the essential terms of the February 14th Document.

According to Plaintiff, the February 14th Document was "a written Settlement and Release Agreement memorizing [*sic*] the parties['] January 25, 2018 settlement." (*Id.* at 2.) The "January 25th settlement" apparently was when Plaintiff allegedly accepted Defendant's January 19th Settlement Offer. The settlement offer, however, did not contain the Second Term. Thus, the February 14th Document included an additional and "essential" term that was not in Defendant's original settlement offer.

On these facts, the Court cannot find that there was a meeting of the minds between the parties simply because Defendant did not object to the domain transfer language in his first response to the February 14th Document. This is further evidenced by how Defendant immediately called and then e-mailed Plaintiff's counsel after receiving the February 14th Document to bring into issue the Second Term. Moreover, while the inclusion of the Domain Transfer language in the February 14th Document supports the fact that the parties had been discussing the Second Term, the February 14th Document was definitely not a memorialization of the January 19th Settlement Offer.

In addition, prior to the February 14th Document, Defendant had asked for at least sixty days to transfer its domain and noted how the parties had previously discussed a transfer timeline of six months. The Court finds that Plaintiff's immediate response of agreeing to sixty days in the February 14th Document was not indicative of a meeting of the minds between the parties on this term. From Defendant's e-mail, it is more than reasonable to believe that the duration of the transfer timeline was still

subject to further negotiation.

**B.     "Collateral Issues"**

In its Motion, Plaintiff acknowledged that Defendant "may assert that the Court should not enforce the [February 14th Document] as there was still ongoing discussion between the parties about certain collateral issues." (ECF No 28 at 10.)  Plaintiff then addressed how the Eighth Circuit has held: "Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable."  *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997).  In *Sheng*, the court held that an agreement settling the employee's Title VII claims against its employer was an enforceable contract, despite the fact the parties had left some details for counsel to work out during later negotiations.  (*Id.*)  In the case, these details included the "tax treatment of the payment" and "other particulars, such as the wording of clauses regarding confidentiality, disclaimers and the release of liability."  (*Id.*)

It is not clear how Colorado appellate courts would treat this "collateral issues" dispute.  Even if, however, Plaintiff had convinced the Court that domain transfer was part of Defendant's January 19th Settlement Offer, the Court would not have determined that domain transfer, including its timing, to be merely a collateral matter.  A review of the record shows that domain transfer was of vital importance to both parties.  In Plaintiff's own e-mail, it states that domain transfer "is a fundamental part of the settlement."  (ECF No. 28-7 at 1.)  In addition, the issue of domain transfer has held up the finalization of all settlement proposals.  (*See* ECF Nos. 28-5 at 1, 28-7 at 1–2, 28-8 at 1–2.)

Moreover, both parties have repeatedly expressed concerns about what will happen to Defendant's current website. Their concerns are well-founded. As previously mentioned, Defendant and Plaintiff represent different sides of the insurance claims process—Plaintiff represents the insurers, while Defendant represents the insured. (*See* ECF No. 1 at 4.) Therefore, each party is concerned about their respective clients confusing them for the other. It is obviously important to the parties whether Defendant's current website redirects to its new website, or whether the current website is completely shutdown. Accordingly, a domain transfer, and the timing of when it happens, is not simply an ancillary issue to settlement such as the tax treatment of a payment or the wording of clauses regarding confidentiality. As Defendant states in its Response, "[domain transfer] represents one third of the total issues the parties have sought to resolve through settlement and has been the subject of ongoing discussion between the parties well after any supposed enforceable settlement was reached January 25 or February 14, 2018." (ECF No. 29 at 6.) The Court finds Defendant's argument to be persuasive.

In conclusion, the February 14th Document was not an enforceable contract, because there was no meeting of the minds between the parties as to the essential terms of the putative settlement agreement, as required by Colorado contract law. Moreover, because the February 14th Document is not an enforceable contract, Plaintiff is not entitled to attorney's fees pursuant to that document.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

11

1. Plaintiff's Motion to Enforce Settlement Agreement, Award Attorney's Fees And Stay All Deadlines Pending (ECF No. 28) is DENIED;

2. The request for the Stay contained in the Motion is also DENIED; and

3. The parties shall comply with all pretrial deadlines imposed by Judge Mix's Order (ECF No. 33) granting in part Plaintiff's Motion to Amend the Scheduling Order.

Dated this 3rd day of December, 2018.

BY THE COURT:

William J. Martínez
United States District Judge